RECORD NO. 14-6590

In The

# United States Court of Appeals
## For The Fourth Circuit

## RASHAAD TIWANIA JONES,

*Petitioner – Appellee*,

**v.**

## HAROLD W. CLARKE, Director,
## Virginia Department of Corrections,

*Respondent – Appellant*.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### AT NORFOLK

——————

### BRIEF OF APPELLEE

——————

**Thomas E. Vanderbloemen**
**GALLIVAN, WHITE & BOYD, PA**
**55 Beattie Place, Suite 1200**
**Greenville, South Carolina 29603**
**(864) 271-9580**

*Counsel for Appellee*

<u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................iii

STATEMENT OF THE ISSUE..............................................................................1

STATEMENT OF THE CASE ...............................................................................2

     A.    The Trial Underlying Jones' Conviction ...............................................2

     B.    Jones' Petitions for Habeas Corpus and the Decisions Below ............4

SUMMARY OF THE ARGUMENT ......................................................................9

ARGUMENT ........................................................................................................10

I.     Standard of Review .....................................................................................10

II.    The District Court Correctly Granted Habeas Relief ...................................11

     A.    Counsel's Performance Concerning the
           Fingerprint Evidence was Deficient....................................................11

     B.    Jones Was Prejudiced..........................................................................15

     C.    The Supreme Court of Virginia's Decision is Unreasonable .............17

     D.    The Commonwealth's Arguments on Appeal are Unpersuasive........24

           1.    The Commonwealth's Argument That Jones Needed to
                Challenge the "Accuracy" or "Reliability" of the
                Fingerprint Evidence is Contrary to Established U.S.
                Supreme Court Case Law .........................................................24

           2.    There Was No Reasonable "Tactical" Decision.......................25

           3.    The District Court Did Not Impermissibly
                Shift the Burden to the Commonwealth ...................................29

CONCLUSION.....................................................................................................33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

TABLE OF AUTHORITIES

Page(s)

CASES

*Bullcoming v. New Mexico*,
    131 S.Ct. 2705 (2011) ...............................................................23, 29, 30, 31

*Crawford v. Washington*,
    541 U.S. 36 ...........................................................................................*passim*

*Elmore v. Ozmint*,
    661 F.3d 783 (4th Cir. 2011) .......................................................................10

*Harrington v. Richter*,
    562 U.S. __, __, 131 S.Ct. 770 (2011) .............................................11, 15, 16

*Hurst v. Joyner*,
    757 F.3d 389(4th Cir. 2014) ...................................................................10, 17

*Melendez–Diaz v. Massachusetts*,
    557 U.S. 305 (2009) ..........................................................................*passim*

*Panetti v. Quarterman*,
    551 U.S. 930 (2007) ..............................................................................10, 23

*Strickland v. Washington*,
    466 U.S. 668 (1984) .............................................................................*passim*

*United States v. Tirado-Tirado*,
    563 F.3d 117 (5th Cir. 2009) .................................................................30, 32

*Wiggins v. Smith*,
    539 U.S. 510 (2003) ..............................................................................19, 26

STATUTES

28 U.S.C. § 2254...............................................................................................6

28 U.S.C. § 2254(d)(1) ...........................................................................10, 17, 23

## CONSTITUTIONAL PROVISION

U.S. CONST. amend VI ...........................................................................12, 13, 14, 32

## STATEMENT OF THE ISSUE

Clearly established U.S. Supreme Court case law applying the Confrontation Clause, including *Melendez–Diaz v. Massachusetts*, 557 U.S. 305 (2009), forbids the prosecution from using a forensic analyst's "certificate of analysis" against a defendant unless the prosecution presents the analyst to testify or unless the analyst is unavailable and the defendant has had a prior opportunity to confront the analyst.  In a state court bench trial, Appellee Rashaad Tiwania Jones' trial counsel failed to invoke this clearly established law, which would have resulted in the exclusion of a key piece of forensic evidence against him.  Had that evidence been excluded, there would have been insufficient evidence of guilt beyond a reasonable doubt.

The issue in this appeal is whether the district court correctly granted Jones' petition for habeas corpus after properly concluding that Jones received ineffective assistance of counsel for the failure to invoke these Confrontation Clause rights and further concluding that the state court's failure to grant habeas relief on these grounds was unreasonable and in violation of clearly established U.S. Supreme Court decisions.

STATEMENT OF THE CASE

A.     The Trial Underlying Jones' Conviction

As the district court correctly observed, this is an "unusual" case.  J.A. 230, 232.  Jones was charged with stealing a television set from an unoccupied rental house that was being repaired after flood damage.  J.A. 15-17; 81-83.  Jones was tried in a Virginia court by a judge without a jury, was convicted of breaking and entering and grand larceny, and received a sentence of thirty years in prison, with twenty years suspended.  J.A. 81-83.

What makes the case "unusual" is that it involved a bench trial where "the Commonwealth's entire case" against Jones "consisted of two witnesses."  J.A. 230.  The first witness was Jereme Joseph, who owned the television set, and the second witness was Karen Shuler, the police investigator who responded to the break-in at the house.  J.A. 36.

The testimony of both witnesses – the Commonwealth's entire case against Jones – was extremely limited, consisting of less than 30 pages of transcript.  J.A. 14-41.  Indeed, Joseph's direct examination occupied only nine pages of transcript; Shuler's only seven.  J.A. 14-22; 31-37.

The one witness the Commonwealth did not call was the analyst who concluded that a single fingerprint found on a rear window pane of the house "matched" Jones.  Instead, this evidence was admitted on a piece of paper, a

"Certificate of Analysis", without allowing Jones the opportunity to confront or cross-examine the analyst who reached this conclusion against him. J.A. 36-37.

The theft of the television set happened in January 2010. During that time, the owner of the set was not living at the house because it was being repaired due to water damage. He admitted that while he was away, someone – presumably workers – moved his television and other belongings into one room of the house. He also admitted that "people had been in and out" of the house while it was being repaired. J.A. 23-24.

Although some of the record materials refer to Jones as an "acquaintance" of Joseph, the testimony shows only limited interaction. Jones had only visited the house in this case "one time", when he was invited with his cousin and came in through the front door into the family room. J.A. 19-20.

After his television was stolen, Joseph apparently got a phone call from Jones, who was in jail. The circumstances are not entirely clear from the testimony, but Joseph "just decided to take it up and go down there" to the jail to talk to Jones. J.A. 21. Joseph admitted that his conversation with Jones lasted only "a few seconds." J.A. 21. In this exceptionally brief conversation, Joseph claims that Jones said he "made a mistake or whatever." J.A. 22. Even Joseph conceded it "really wasn't no explanation." J.A. 22.

Other than Joseph, the only other witness was Investigator Shuler. Shuler testified that she responded to the scene and determined that the perpetrator of the crime had likely gained access to the house through a *rear* window, where both panes had been broken. J.A. 34, 39-40.

Shuler further testified that she lifted fingerprints from the broken window and a sliding glass door. J.A. 35. Critically, she admitted that she was "not an expert to qualify those prints," and that she "could not say which one was really good." J.A. 35.

The Commonwealth submitted a "certificate of analysis" purportedly containing forensic results. According to Shuler – who admitted she was not a fingerprint expert – the certificate of analysis identified a single fingerprint from the rear window as belonging to Jones. J.A. 36, 39-40. The Commonwealth did not offer the testimony of anyone from the department of forensic sciences who prepared the certificate of analysis.

Jones' counsel did not challenge the admission of the fingerprint evidence. According to the trial judge, the fingerprint was a key piece of evidence supporting Jones' conviction. J.A. 44.

B.    Jones' Petitions for Habeas Corpus and the Decisions Below

After an unsuccessful direct appeal, Jones sought post-conviction relief from the Supreme Court of Virginia. J.A. 50. Among his grounds for relief, Jones

argued that he was denied effective assistance of counsel concerning the fingerprint evidence. He submitted that counsel had failed to conduct an adequate pre-trial investigation concerning its admissibility, failed to call the actual expert who conducted the examination of the fingerprint, and failed to object to the admission of the analysis on the basis that it violated his rights under the Confrontation Clause. J.A. 53.

Jones' trial counsel submitted an affidavit claiming that she had conducted an adequate pre-trial investigation and "had no reason to question the admissibility of the fingerprint evidence." J.A. 87. She also stated she "had reason to believe that the defendant's fingerprints would likely have been found on the scene due to his presence there on a different occasion." J.A. 87. Although counsel was aware that she could have required the prosecution to present at trial the testimony of the scientific expert who conducted the analysis, she felt "nothing appeared to be gained by challenging to [sic] admission of the certificate of analysis." J.A. 88.

The Supreme Court of Virginia denied Jones' claims, concluding that he had failed to satisfy the "performance" or "prejudice" prongs of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984). J.A. 131-34. The Supreme Court of Virginia concluded that Jones had to show that the fingerprint evidence was somehow inadmissible, unreliable, or incorrect; that Jones' counsel had "found no basis" to challenge that evidence; that Jones had not

proffered what evidence the actual expert who analyzed the fingerprint would have provided; and that counsel had made a "strategic decision not to challenge" the evidence. J.A. 131-34.

Jones filed a petition in district court pursuant to 28 U.S.C. § 2254. The assigned U.S. Magistrate Judge recommended that the petition be denied, and Jones objected to the recommendation. J.A. 189, 208. The U.S. District Judge, although adopting the recommendation as to grounds raised by Jones on other issues, rejected the recommendation as to the fingerprint evidence issues. J.A. 222.

According to the U.S. District Judge, Jones was denied effective assistance of counsel and was prejudiced by his trial counsel's performance under *Strickland*. The district court concluded that counsel's performance was deficient because "there is little dispute that had trial counsel objected when the Commonwealth attempted to introduce the fingerprint analysis, she could have successfully challenged the admissibility of the certificate" under *Melendez–Diaz v. Massachusetts*, 557 U.S. 305 (2009). J.A. 228-30. The district court also ruled that Jones was prejudiced by this failure because of the extremely limited nature of the evidence in the case, such that "had trial counsel been able to exclude or undermine the fingerprint analysis, it is likely to have had a significant impact on the likelihood of [Jones'] conviction." J.A. 231.

Furthermore, the district court determined that the Supreme Court of Virginia's decision rejecting Jones' claims was an unreasonable application of *Strickland*, finding "no conceivable basis for upholding the Supreme Court of Virginia's conclusion." J.A. 230. For example, the district court explained that it was unreasonable to accept counsel's assumption that the fingerprint, which was found on an outside windowpane on the rear of the house, could have arisen from Jones' sole visit to the house and therefore would not be worth challenging. J.A. 229-30. As the district court observed, the trial testimony was that Jones only visited the house once, when he "entered through the front door and sat in the family room"; there was no evidence "that [Jones] went outside and touched that window." J.A. 230 (citing transcript).

The district court further found as unreasonable the Supreme Court of Virginia's failure to find prejudice, highlighting the court's failure to appreciate "the obvious centrality of the fingerprint evidence in the Commonwealth's case" and the court's misapplication of the relevant U.S. Supreme Court authority:

> Instead of requiring [Jones] to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," which [Jones] has already done, the Supreme Court of Virginia appears to have required [Jones] prove either that the internal workings of the crime lab were flawed in some way or that he was conclusively innocent and so could not have had his fingerprints at the window. Such a high burden not only contravenes *Strickland* but effectively "convert[s] the prosecution's duty under the

> Confrontation Clause into the defendant's privilege under
> state law." *Melendez–Diaz*, 557 U.S. at 324. Such
> reasoning also assumes that such certificates are
> inherently reliable, even though the Confrontation Clause
> "commands, not that evidence be reliable, but that
> reliability be assessed in a particular manner: by testing
> in the crucible of cross-examination." *Crawford* [*v.*
> *Washington*], 541 U.S. [36] at 61 [2004].

J.A. 232.

The district court, although cognizant that it is the "unusual case" to grant habeas relief to a state prisoner raising an ineffective assistance of counsel claim, concluded that "where there is a clear error and where the record is equally clear that such an error made a difference, relief is appropriate." J.A. 232. The district court, therefore, granted the petition on these grounds and ordered that Jones' conviction and sentence be vacated.

The Commonwealth appealed.

## SUMMARY OF THE ARGUMENT

The district court properly granted habeas corpus relief to state prisoner Rashaad Tiwania Jones. Jones was denied his constitutional right to effective assistance of counsel because counsel failed to protect Jones' rights under the Confrontation Clause, allowing the prosecution to use a "certificate of analysis" of a single fingerprint found at the crime scene against Jones without the testimony of the analyst who performed that analysis, in violation of *Melendez–Diaz v. Massachusetts*, 557 U.S. 305 (2009) and other existing precedent. Jones suffered prejudice from this error because the prosecution's case was extremely limited, with even the trial judge emphasizing the importance of the fingerprint evidence.

The state court's failure to grant habeas relief on these grounds was unreasonable and its rationales are in direct conflict with clearly established U.S. Supreme Court decisions. The district court, fully aware of the typically high burden faced by state habeas petitioners, carefully applied the law and correctly concluded that Jones was entitled to relief under the "unusual" circumstances of this case.

## ARGUMENT

### I.    Standard of Review

This court reviews *de novo* the district court's decision to grant habeas relief in this case. *See Elmore v. Ozmint*, 661 F.3d 783, 849 (4th Cir. 2011), as amended (Dec. 12, 2012). Where a state court initially reviewing a petitioner's claim reaches a decision on the merits, a federal court should grant habeas relief if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

This is a deferential framework, requiring federal courts not just to determine whether a state court's decision is incorrect, but whether it was also "unreasonable." *See Hurst v. Joyner*, 757 F.3d 389, 394 (4th Cir. 2014). However, if the state court's adjudication of a claim is "dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied,…[and a] federal court must then resolve the claim without the deference AEDPA otherwise requires." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007).

Where the habeas petitioner claims to have been deprived effective assistance of counsel, this court applies the standard in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a showing of 1) deficient performance by the

10

attorney and 2) resulting prejudice to the defendant. "To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. __, __, 131 S. Ct. 770, 787 (2011) (citation omitted). "With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation omitted).

Considering these standards in the context of a state habeas petition alleging ineffective assistance of counsel, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 785.

II.    The District Court Correctly Granted Habeas Relief

    A.    Counsel's Performance Concerning the
           Fingerprint Evidence was Deficient

To assess whether the state court's application of *Strickland* was unreasonable, the court must first address whether trial counsel's failure to protect Jones' rights under the Confrontation Clause "fell below an objective standard of reasonableness." *Id.* at 787. Here, the district court properly concluded that trial counsel's performance was deficient under *Strickland*. As the district court correctly observed, "there is little dispute that had trial counsel objected when the Commonwealth attempted to introduce the fingerprint analysis, she could have

11

successfully challenged the admissibility of the certificate" under *Melendez–Diaz v. Massachusetts*, 557 U.S. 305 (2009).  J.A. 228-29.

In *Melendez-Diaz*, the U.S. Supreme Court confirmed that certificates of analysis from forensic crimes labs such as the one used against Jones are within the "core class of testimonial statements" and are covered by the Confrontation Clause of the Sixth Amendment.  557 U.S. at 310.  The Court explained that, absent a showing that the forensic analysts were unavailable to testify at trial *and* that the defendant had a prior opportunity to cross-examine them, a defendant is "entitled to 'be confronted with' the analysts at trial."  *Id.* at 311 (citation omitted).

In that case, the prosecution submitted into evidence three "certificates of analysis" purporting to show the results of forensic analysis on substances seized from a police cruiser after the defendant's arrest, substances that the prosecution asserted were cocaine.  *See id.* at 308.  The prosecution attempted to establish that the substances were cocaine merely by presenting the certificates of analysis – essentially affidavits – and not by presenting the testimony of the actual forensics analysts who reached this conclusion.  Without those analysts' testimony, the prosecution could not rely solely on the certificates of analysis without violating the defendant's right to confront his accusers, because the "Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits."  *Id.* at 329.

12

The Supreme Court explained that its conclusion in *Melendez-Diaz* involved "little more than the application of our holding in *Crawford v. Washington*, 541 U.S. 36." *Id.* *Crawford* involved a defendant accused of stabbing a man who was allegedly trying to rape his wife. *See Crawford*, 541 U.S. at 38. At the trial, the state court admitted into evidence a tape-recorded statement given to police by the defendant's wife, even though his wife could not testify due to the state's marital privilege. *See id.* at 40. The state court admitted the testimony on the ground that, although hearsay, it bore "particularized guarantees of trustworthiness." *Id.*

The U.S. Supreme Court reversed Crawford's conviction, reaffirming the "Framers' understanding" of the Sixth Amendment's Confrontation Clause that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59. The Court stressed that a defendant's rights under the Confrontation Clause are not conditioned by the supposed "reliability" of the out-of-court statement:

> [The Confrontation Clause] commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.

*Id.* at 61.

13

At the time of Jones' trial, well-established Supreme Court case law dictated that the prosecution could not prove its case merely by relying on out-of-court statements such as "certificates of analysis" from forensics crime labs. *See Melendez–Diaz*, 557 U.S. at 329 (explaining that the Sixth Amendment "does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits."); *Crawford*, 541 U.S. at 59 ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.").

Here, trial counsel did not object to the admission of the "certificate of analysis" in Jones' trial, even though this certificate purportedly "testified" against him that a single fingerprint from the scene "matched" Jones and thus provided a key reason for Jones' conviction. Counsel did not require the Commonwealth to present the actual forensics expert who prepared the certificate identifying Jones' fingerprint, did not insist on a prior opportunity to cross-examine the witness, and did not demand that the Commonwealth establish that the witness was unavailable.

As the district court correctly observed, "there is little dispute that had trial counsel objected when the Commonwealth attempted to introduce the fingerprint analysis, she could have successfully challenged the admissibility of the certificate." J.A. 228-29 (citing *Melendez–Diaz*). Therefore, counsel's performance "fell below an objective standard of reasonableness" because it was

clear that the Confrontation Clause guaranteed Jones these rights. *Harrington*, 131 S.Ct. at 787 (quotation omitted).

    B.    <u>Jones Was Prejudiced</u>

There can also be little argument that Jones was prejudiced by counsel's deficient performance concerning the fingerprint evidence. As the district court observed, this case was "unusual because it was a bench trial where the judge stated his findings of fact on the record," and because "the Commonwealth's entire case consisted of two witnesses, unlike many cases where the evidence is overwhelming and the questioned evidence therefore plays only a small role in a defendant's conviction." J.A. 230-31.

The total testimony in the case occupied less than 30 pages of transcript, and the trial judge relied heavily on the fingerprint evidence. J.A. 14-41. Apart from the one fingerprint, there was hardly any evidence proving guilt beyond a reasonable doubt. There are only two other pieces of evidence the trial court even mentioned. J.A. 43-44.

The first was the exceptionally brief and unclear conversation at the jail with the television set's owner, Mr. Joseph, where Jones allegedly said he "made a mistake." J.A. 22. Even Joseph conceded it "really wasn't no explanation" and that the conversation lasted only "a few seconds." J.A. 21-22.

The other piece of evidence, to the extent it can even be called evidence, is the fact that Jones had visited the house on <u>one occasion</u> prior to the theft. However, this fact alone would not make Jones a suspect, much less guilty beyond a reasonable doubt, any more than it would implicate Jones' cousin, who visited the house with him on that one occasion, or the numerous people who "had been in and out" of the house while it was being repaired. J.A. 23-24.

Without the fingerprint evidence, the prosecution could not use this scant remaining evidence to prove guilt beyond a reasonable doubt. Even the trial judge, who convicted Jones without a jury, noted the importance of the fingerprint. *See* J.A. 44 (Trial Judge: "I think when you take the fingerprint and *combine it with* the recent visit and you *combine it with* the statement I think that's sufficient beyond a reasonable doubt.") (emphasis added). As the district court correctly observed, "[i]t is evident that the judge therefore relied on both pieces of evidence (the fingerprint and [Jones'] statement to Mr. Joseph) to arrive at the conclusion that [Jones] was guilty beyond a reasonable doubt." J.A. 231.

Therefore, had Jones' counsel invoked his rights under the Confrontation Clause, there is "a reasonable probability," one "sufficient to undermine confidence in the outcome," that "the result of the proceeding would have been different." *Harrington*, 131 S.Ct. at 787; *see also* J.A. 231 ("Therefore, had trial counsel been able to exclude or undermine the fingerprint analysis, it is likely to

have had a significant impact on the likelihood of [Jones'] conviction."). As a result, Jones was prejudiced.

C.     The Supreme Court of Virginia's Decision is Unreasonable

As discussed above, where a state habeas petitioner claims ineffective assistance of counsel, he must not only demonstrate counsel's deficient performance and resulting prejudice under *Strickland*, but must also show that the state habeas court's denial of his petition was "unreasonable" in its application of clearly established Federal law. *See* 28 U.S.C. § 2254(d)(1); *Hurst v. Joyner*, 757 F.3d 389, 394 (4th Cir. 2014).

As to the first question of whether counsel's performance was deficient, the district court properly ruled that the Supreme Court of Virginia's decision was unreasonable. As noted above and by the district court, *Melendez-Diaz* and *Crawford* made clear that Jones had a right to exclude the fingerprint evidence. *See* J.A. 228-29; *see also Melendez-Diaz*, 557 U.S. at 311 (absent a showing that the forensic analysts were unavailable to testify at trial and that the defendant had a prior opportunity to cross-examine them, a defendant is "entitled to 'be confronted with' the analysts at trial") (quoting *Crawford*).

The Supreme Court of Virginia, however, reasoned that counsel's performance was not deficient because trial counsel made a "strategic decision" not to challenge the fingerprint evidence, presumably because she knew Jones had

17

been at the house before and his fingerprints would likely have been found there, and because she had "no reason" to challenge the "accuracy" of the analysis. J.A. 133. This conclusion is not reasonable because it misapprehends the limited evidence in the record, which provided no basis to assume that Jones' single visit to the house would have resulted in a fingerprint on the outside pane of a rear window. The owner of the television, Mr. Joseph, testified that Jones had come to his home on only one occasion and clearly stated that Jones entered through the front door and sat in the family room. J.A. 19-20.

There would be no reason for trial counsel – or the Supreme Court of Virginia – to assume from this evidence that Jones' fingerprint could end up on an *outside* windowpane on the *rear* of the house. Indeed, and as the trial judge himself noted, there was no evidence "that [Jones] went outside and touched that window." J.A. 43. The district court, therefore, correctly concluded that it was unreasonable for "trial counsel to assume that the print was from that prior occasion," just as it was unreasonable for the Supreme Court of Virginia to accept that assumption. J.A. 230. There was no "strategic" reason to assume Jones' single visit to the house would have led to a fingerprint on a rear windowpane.

Nor was there any other reason for trial counsel to accept the presumed "reliability" of the evidence. While trial counsel claimed to have conducted an adequate pre-trial investigation and had "no reason" to question the admissibility

18

of the fingerprint evidence, she provided little detail to support this conclusory assertion other than referencing Jones' prior presence at the house. As the district court observed, counsel "did not indicate, for example, that she spoke with the analyst and concluded that an inquiry into their methods would have been fruitless." J.A. 232.

Furthermore, because she did not require the analyst's testimony at trial, counsel had no chance to examine how the fingerprint allegedly "matched" Jones. This testimony certainly could not be provided by Investigator Shuler, who admitted she was "not an expert to qualify those prints," and that she "could not say which one was really good." J.A. 35. Under these circumstances, there is no reason to presume that counsel's conclusory statement reflects a "reasoned strategic judgment" rather than "inattention" to Jones' rights under the Confrontation Clause. *Cf. Wiggins v. Smith*, 539 U.S. 510, 526 (2003) ("The record of the actual sentencing proceedings underscores the unreasonableness of counsel's conduct by suggesting that their failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment….).

The district court also correctly determined that the Supreme Court of Virginia's finding of no prejudice was unreasonable. As the district court observed, the Supreme Court of Virginia "did not discuss the obvious centrality of the fingerprint evidence in the Commonwealth's case," and instead seemed to

conclude that there was no prejudice to Jones because there was no evidence proffered to undermine the validity of that evidence.  J.A. 231.  For example, the Supreme Court of Virginia criticized Jones for failing "to provide any evidence to support an argument that the fingerprint evidence presented at trial was inadmissible or unreliable" and for failing to "to proffer what evidence the forensic expert who conducted the fingerprint analysis would have provided or how such testimony would have established the fingerprint evidence was incorrect or inadmissible."  J.A. 132.

This reasoning, however, is squarely foreclosed by U.S. Supreme Court precedent.  The Supreme Court of Virginia's decision turns the Confrontation Clause on its head, reversing what is a constitutional right to confront accusers in court into a privilege that can only be obtained if the defendant somehow proffers independent proof that the accuser is lying or the evidence is "inaccurate" or "unreliable."  The U.S. Supreme Court's holdings in several cases, especially *Crawford*, sensibly reject such an argument.

In *Crawford*, the U.S. Supreme Court went to great lengths explaining the fact that a defendant's rights under the Confrontation Clause *do not depend* on the alleged "reliability" of the out-of-court statement.  As the Court explained, the Confrontation Clause "commands, not that evidence be reliable, but that reliability

be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61.

What this means is that a *defendant* should not have to somehow prove the *unreliability* of the scientific evidence against him just to invoke his rights under the Confrontation Clause. *Melendez-Diaz* made this clear, that the Confrontation Clause treats all testimonial evidence – scientific or not – according to the same standard, entitling the defendant to test it in court regardless of how "reliable" it may be. Confrontation "is designed to weed out not only the fraudulent analyst, but the incompetent one as well," noting that "[s]erious deficiencies have been found in the forensic evidence used in criminal trials." *Melendez-Diaz*, 557 U.S. at 319. The Supreme Court referred to commentary and reports discussing the use of erroneous forensic evidence leading to erroneous convictions, including one "study of cases in which exonerating evidence resulted in the overturning of criminal convictions [that] concluded that invalid forensic testimony contributed to the convictions in 60% of the cases." *Id.* (citation omitted).

This is not to say that forensic evidence is inherently unreliable, just that courts must not presume that it is always "uniquely reliable" so as to deny criminal defendants their right to confront their forensic accusers. *Id.* at 319, n.6. "The analysts who swore the affidavits provided testimony against Melendez–Diaz, and they are therefore subject to confrontation; we would reach the same conclusion if

21

all analysts always possessed the scientific acumen of Mme. Curie and the veracity of Mother Theresa." *Id.*

The Supreme Court of Virginia's decision – which presumed the reliability of the scientific evidence and required Jones to prove otherwise to invoke his rights under the Confrontation Clause – was unreasonable and cannot be squared with the U.S. Supreme Court case law or with the constitutional entitlement to effective assistance of counsel as discussed in *Strickland*.

The district court honed in on this specific problem with the state court's decision, explaining that it "appears to have required [Jones] prove either that the internal workings of the crime lab were flawed in some way or that he was conclusively innocent and so could not have had his fingerprints at the window." J.A. 232. The district correctly concluded that this "high burden not only contravenes *Strickland* but effectively 'convert[s] the prosecution's duty under the Confrontation Clause into the defendant's privilege under state law.'" *Id.* (quoting *Melendez–Diaz*, 557 U.S. at 324). Another problem with the state court's reasoning is that it "assumes that such certificates are inherently reliable, even though the Confrontation Clause 'commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.'" *Id.* (quoting *Crawford*, 541 U.S. at 61).

As the U.S. Supreme Court reaffirmed in *Crawford*, "[d]ispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." *Crawford*, 541 U.S. at 62. *See also Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2715 (2011) ("This Court settled in *Crawford* that the 'obviou[s] reliab[ility]' of a testimonial statement does not dispense with the Confrontation Clause.") (citations omitted).

The district court reached the correct result in determining that the Supreme Court of Virginia's rejection of Jones' state habeas petition was unreasonable, because that court ignored the obvious deficiencies in counsel's performance and the resulting prejudice in a manner that was directly contrary to the U.S. Supreme Court's case law.[1]

---

[1]    As discussed above, where a state court's adjudication of a claim is "dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied,…[and a] federal court must then resolve the claim without the deference AEDPA otherwise requires." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Therefore, if this court concludes that the state court unreasonably decided the "deficient performance" prong of *Strickland*, this court can review the issue of prejudice without necessarily according the deference under the AEDPA. *See id.* at 953-54 (citing cases). Nevertheless, even if such deference is accorded, the state court's decision was an unreasonable application of *Strickland* and contrary to existing U.S. Supreme Court law, including *Melendez-Diaz* and *Crawford*.

D.    The Commonwealth's Arguments on Appeal are Unpersuasive

The Commonwealth seeks to reverse the district court's decision by raising a number of different arguments, which can generally be grouped into one of three categories. First, the Commonwealth argues that the state court's decision was not unreasonable because Jones failed to proffer evidence questioning the accuracy or reliability of the fingerprint analysis. Second, the Commonwealth contends that the state court reasonably concluded that trial counsel made a "tactical" decision not to contest the fingerprint evidence. Third, the Commonwealth submits that the district court impermissibly shifted to the Commonwealth the burden under *Strickland*. These arguments, however, are incorrect and ignore controlling U.S. Supreme Court precedent.

1.    The Commonwealth's Argument That Jones
      Needed to Challenge the "Accuracy" or "Reliability"
      of the Fingerprint Evidence is Contrary to
      Established U.S. Supreme Court Case Law

The Commonwealth claims that Jones did not "proffer any evidence" to challenge the accuracy of the fingerprint analysis and that the district court "merely speculated that counsel could have attacked the factual accuracy of the [forensic] expert's conclusion." Commonwealth's Br., at 19-20. This argument, which presumes the "reliability" and "accuracy" of the fingerprint evidence, is the same unreasonable approach used by the Supreme Court of Virginia that is foreclosed by U.S. Supreme Court case law. As the discussion and case law cited above

24

demonstrate, courts may not presume the reliability or accuracy of forensic evidence and cannot require a defendant to somehow challenge that presumption as a condition to his rights under the Confrontation Clause. *See supra* § II.C; *see also Melendez-Diaz*, 557 U.S. at 319 n.6; *Crawford*, 541 U.S. at 62.

### 2. There Was No Reasonable "Tactical" Decision

The Commonwealth also argues that counsel's failure to challenge the fingerprint evidence should be excused as a "tactical" decision. While *valid* tactical and strategic decisions by counsel are entitled to some deference in this context, there must have been a *reasonable basis* for those decisions to make them valid. As noted above, the only reasons trial counsel offered were based on her belief that the "fingerprints would likely have been found on the scene due to [Jones'] presence there on a different occasion." J.A. J.A. 87-88. However, this belief was not reasonable because Jones' "presence there on a different occasion" – coming through the front door and staying in the family room on only one visit – could not have led him to leave a fingerprint on the outside pane of a rear window on the house.

Rather than justifying this alleged "tactical" reason, the Commonwealth suggests a number of *other* "tactical" reasons that counsel *might* have had. For example, the Commonwealth posits that "counsel *may have* reasonably decided that there was a *downside* to challenging the certificate and thus requiring the

25

analyst's presence," and that "reasonable counsel *could have* concluded that an expert might have been able to 'qualify' the 'absence' of evidence." Commonwealth's Br. at 21-24 (some emphasis added). The Commonwealth also points to other potential reasons discussed in *Melendez-Diaz* for why counsel and their clients might not challenge forensic evidence in certain cases. *See id.*

The Commonwealth's alleged "tactical" reasons, however, are new, and were never offered by trial counsel. Nor did the Commonwealth offer these reasons to the Supreme Court of Virginia or to the district court below. J.A. 76-77, 133. Apart from the obvious waiver problems this situation creates for the Commonwealth, the U.S. Supreme Court has cautioned against employing just this type of "post hoc rationalization of counsel's conduct," rather than providing "an accurate description" of what really occurred. *Wiggins*, 539 U.S. at 526-27 ("The record of the actual sentencing proceedings underscores the unreasonableness of counsel's conduct by suggesting that their failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment…. the 'strategic decision' the state courts and respondents all invoke to justify counsel's limited pursuit of mitigating evidence resembles more a post hoc rationalization of counsel's conduct than an accurate description of their deliberations prior to sentencing.").

For similar reasons, the Commonwealth takes *Melendez-Diaz* out of context and misses the point when claiming that the Supreme Court "recognized that

defense lawyers often will make the tactical decision not to object to a laboratory analysis."  Commonwealth Br., at 22.  In *Melendez-Diaz*, the Court was offering reasons why its decision would not commence a "parade of horribles," in part because *in some cases* "[d]efense attorneys *and their clients*" will often stipulate to the nature of the substance in the ordinary drug case."  557 U.S. at 328 (emphasis added).    But this does not mean that counsel's failure to protect Jones' confrontation rights *in this case* was a proper "strategic" decision.  On the contrary, and as the district court explained, a "strategic decision" implies "a choice that carries *both* costs and benefits.  Here, there was no apparent cost to objecting to the fingerprint certificate, and only a significant benefit to be gained."  J.A. 230 (emphasis in original).[2]

Thus, regardless of potential strategic reasons that might be reasonable in other cases, Jones' case presented no "strategic" reason not to raise the Confrontation Clause issue in this case given the scant evidence and the high likelihood that, without the fingerprint evidence, he would not have been convicted.  *See* J.A. 229-31.  Tellingly, Jones' counsel even argued that there was

---

[2]    The district court was not, as Commonwealth implies, applying a "nothing to lose" standard to counsel's conduct.  The district court faithfully applied *Strickland*, explaining that there was so much to be gained from raising the fingerprint issue that the failure to do so demonstrated a lack of any reasonable "strategic decision."  J.A. 230 ("While trial counsel certainly has leeway to make reasonable strategic decisions, the term 'strategic decision' implies a choice that carries *both* costs and benefits.") (emphasis in original).

only "one item" that connected Jones to the house, and "it is a fingerprint." J.A. 42.

Moreover, counsel's belief that she had had "no basis" to challenge the admissibility of the fingerprint evidence confirms that she failed to appreciate Jones' rights under the Confrontation Clause, not that she made any reasonable tactical decision. The Supreme Court's authority in *Melendez-Diaz* and *Crawford*, both in place at the time of trial, should have informed counsel that she *did* have a reason to challenge the evidence's admissibility. The failure to protect those rights denied Jones his constitutional rights and effective assistance of counsel, and the district court correctly concluded that it was unreasonable for the Supreme Court of Virginia to find otherwise.

The Commonwealth also suggests that the district court's decision would somehow create a "dangerous precedent" that makes counsel's performance *per se* deficient whenever counsel chooses not to "confront" a forensic analyst. *See* Commonwealth's Br. at 22. However, the district court created no such rule and, in fact, stated as much. The district judge, who had over twenty years of experience on the federal bench, was careful to explain that "it is the *unusual case* in which it is appropriate to grant habeas relief to a state prisoner raising an ineffective assistance of counsel claim." J.A. 232 (emphasis added). However, the district court correctly determined that Jones' was one such "unusual case" and

that "where there is a clear error and where the record is equally clear that such an error made a difference, relief is appropriate." J.A. 232.

As such, there is no "dangerous" precedent being set, just a straightforward application of well-established constitutional law to the facts of Jones' case. *Cf. Bullcoming*, 131 S.Ct. at 2717-18 (rejecting as "dubious" the suggestions of allegedly "dire consequences" flowing from "unbending application of the Confrontation Clause to forensic evidence" and reiterating that "[t]he constitutional requirement…may not [be] disregard[ed] ... at our convenience") (citations omitted).

### 3. The District Court Did Not Impermissibly Shift the Burden to the Commonwealth

The Commonwealth also claims that the district court impermissibly shifted the burden under *Strickland*. For example, the Commonwealth argues that "[t]he district court states that the Director did not present an affidavit from the Commonwealth that the Commonwealth could have procured the analyst." Commonwealth's Br. at 25. As a threshold matter, the district court said nothing about the Commonwealth failing to present an affidavit, and the Commonwealth offers no citation to the district court's opinion to support such a claim.

Nevertheless, the district court did not improperly shift the burden under *Strickland*. Rather, the district court merely observed that there was "no evidence that the analyst would have been available or prepared to testify," that "the

29

Commonwealth does not say in its Response that it would have called the analyst had trial counsel objected," and that the Commonwealth had given "no indication" that it would have called the analyst.  J.A. 230-32.  These observations are part of a straightforward application of U.S. Supreme Court precedent concerning the Confrontation Clause.

"As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Bullcoming*, 131 S.Ct. at 2713 (applying *Crawford* and *Melendez-Diaz*).  If the prosecution seeks to introduce such a statement, and if the defendant invokes his right to confront his accusers in this situation, the prosecution must present the witness or at least make the required showing that the witness is unavailable and that there was a prior opportunity to confront.  *See Melendez-Diaz*, 557 U.S. at 324 ("More fundamentally, the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court."); *United States v. Tirado-Tirado*, 563 F.3d 117, 123 & n.3 (5th Cir. 2009) (reaffirming that "[t]he prosecution bears the burden of establishing that a witness is unavailable" and that "*Crawford* did not change the definition of 'unavailability' for Confrontation Clause purposes; pre-*Crawford* cases on this point remain good law").

Therefore, had Jones' counsel raised the Confrontation Clause issues, the fingerprint evidence should have been excluded unless the prosecution was able to argue that the analyst was present to testify or that the analyst was unavailable and a prior opportunity to cross-examine had been provided. The district court was merely observing that the Commonwealth was not making any argument about the analyst's availability or introducing anything to support such an argument. Indeed, in *Bullcoming,* which reaffirmed the rules set forth in *Crawford* and *Melendez-Diaz,* the U.S. Supreme Court made a similar observation, explaining that "[t]he State in the instant case never asserted that the analyst who signed the certification, Curtis Caylor, was unavailable," and that the record "showed only that Caylor was placed on unpaid leave for an undisclosed reason." *Bullcoming*, 131 S.Ct. at 2714-16.

The Commonwealth attempts to deflect this issue further by claiming that it was *Jones* who "had a duty to proffer" information he "could have gleaned from the analyst and that the witness was unavailable to testify." Commonwealth's Br., at 26. However, just as Jones' right to confront his accusers was not conditioned on him proffering evidence of unreliability of the analyst's conclusion, it was not Jones' burden to show whether the analyst was "unavailable." *See supra* § II.C; *see also Crawford*, 541 U.S. at 62 ("Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a

31

defendant is obviously guilty. This is not what the Sixth Amendment prescribes."); *Tirado-Tirado*, 563 F.3d at 123 & n.3 (confirming that prosecution bears the burden of establishing that a witness is unavailable for purposes of the Confrontation Clause, both before and after *Crawford*). Nor would it make sense to require *Jones* to show that the witness was *unavailable*. Jones had a right to require the analyst to testify; if Jones' counsel had objected, the prosecution would have had to either present the analyst or demonstrate the analyst's unavailability and a prior opportunity to cross-examine.

The Commonwealth also suggests that it was Jones' burden under *Strickland* to show that the prosecution could not have gotten a continuance if Jones' counsel had objected on Confrontation Clause grounds. *See* Commonwealth's Br., at 26. In addition to being purely speculative, however, this argument improperly *presumes* that the analyst's testimony, once presented, would have shown the "reliability" and "accuracy" of the certificate of analysis, a presumption that is foreclosed by *Crawford* and *Melendez-Diaz*. This argument disregards the whole *purpose of* the constitutional right of the Confrontation Clause, which "commands, not that evidence be reliable, but *that reliability be assessed in a particular manner: by testing in the crucible of cross-examination*." *Crawford*, 541 U.S. at 61 (emphasis added); *see also Melendez–Diaz*, 557 U.S. at 324-25 (explaining that the value of the Confrontation Clause to a defendant "is not replaced by a system in

which the prosecution presents its evidence via ex parte affidavits and waits for the defendant to subpoena the affiants if he chooses"). It also relies on the faulty premise that "cross-examination of the analysts would be an empty formalism," a suggestion the U.S. Supreme Court rejected in *Melendez-Diaz*. 557 U.S. at 319, n.6.

Moreover, by arguing about what might have happened *had* Jones' trial counsel raised the issue, the Commonwealth assumes away the very problem with this case. The ineffective assistance in this case occurred precisely because Jones' counsel *did not* raise the issue, depriving Jones of the right to confront his accusers and test the reliability of the single fingerprint that was a key piece of evidence leading to his conviction.

<u>CONCLUSION</u>

For the foregoing reasons, Jones respectfully requests that the court affirm the district court's decision.

September 29, 2014                    Respectfully submitted,

                                     /s/ Thomas E. Vanderbloemen
                                     Thomas E. Vanderbloemen
                                     Gallivan, White, & Boyd, P.A.
                                     55 Beattie Place, Suite 1200
                                     P.O. Box 10589
                                     Greenville, South Carolina 29603
                                     (864) 271-9580 (Telephone)
                                     (864) 271-7502 (Facsimile)
                                     *Attorney for Appellee*
                                        *Rashaad Tiwania Jones*

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*7,370*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>September 29, 2014</u>        <u>/s/ Thomas E. Vanderbloemen</u>
                                          *Counsel for Appellee*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 29th day of September, I caused this Brief of

Appellee to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

> Rosemary V. Bourne
> Donald E. Jeffrey, III.
> OFFICE OF THE U.S. ATTORNEY
> 900 East Main Street
> Richmond, Virginia  23219
> (804) 786-4820
>
> *Counsel forAppellant*

I further certify that on this 29th day of September, 2014, I caused the

required copies of the Brief of Appellee to be hand filed with the Clerk of the

Court.

> /s/ Thomas E. Vanderbloemen
> *Counsel for Appellee*